BARRY, Judge.
Plaintiff injured his back September 15, 1982 and his employer, R-N Concrete, paid $204 weekly compensation until April 27, 1983. His suit for total and permanent disability, penalties, and attorney’s fees was dismissed. We affirm.
Plaintiff was hurt on a Wednesday but continued working and completed the next day’s work. By Friday his back pain increased and he could not work, so his employer sent him to Dr. Serio who took x-rays and diagnosed a pulled muscle.
Plaintiff returned to work the following Monday, but could not perform his normal activities. He consulted Dr. LeNoir, orthopedic surgeon, on September 24, 1982, who found a lumbar muscle spasm and osteoarthritis at the third lumbar level and prescribed conservative treatment. By November 16, 1982 the spasms ceased, he had full range of motion, and was released to work a thirty-day trial period. Plaintiff was to return to Dr. LeNoir but never did. He returned to work on November 16, 1982, was laid off, and has not sought other employment.
Dr. LeNoir said plaintiff suffers from spinal arthritis which caused degenerative changes that predate the injury. He testified the spasms were temporary and plaintiff could return to work.
Plaintiff consulted Dr. Kewalramani, a physical medicine and rehabilitation specialist, on November 18, 1982, whose initial diagnosis was degenerative arthritis superimposed with lumbar pain syndrome. Dr. Kewalramani interpreted a CAT scan as showing a herniated disc and an EMG as showing bilateral S-l radiculectomy. The doctor admitted in testimony, however, that those findings were inconsistent with plaintiffs subjective complaints. Dr. Kewalra-mani continued treatment until April 1983 and testified plaintiff has degenerative spinal arthritis coupled with a herniated disc which prevents him from returning to work as a laborer.
Dr. Applebaum, neurosurgeon, reviewed the CAT scan and EMG (by Dr. Kewalra-mani) and found no muscle spasm or evidence of disease involving the spinal cord or nerve roots. He stated Dr. Kewalrama-ni’s findings were inconsistent with his and said there was no neurological reason why plaintiff could not work.
Dr. Martin, neurologist and expert in electrodiagnostic study, conducted an EMG on March 16, 1983 and testified the results were normal and he disagreed with the EMG findings of Dr. Kewalramani.
Dr. LaBorde, orthopedic surgeon, examined plaintiff on April 27, 1983 and found no signs of muscle spasm, but x-rays showed moderate degenerative arthritis of the lumbosacral spine. He testified: “My impression was that he had low back pain by history, which was superimposed on degenerative arthritis of his spine, which was probably pre-existing. He did not have objective impairment on examination, and there was no orthopedic contraindication to him returning to work. He had no neuro-logic abnormality.”
Plaintiff did not consult a physician between April and September 1983. On September 17, 1983 he apparently re-injured his back and went to Hotel Dieu emergency room for treatment and was referred to Dr. Hoerner, orthopedic surgeon. Dr. Hoerner examined plaintiff on September 27, 1983 *891 and did not find muscle spasm. X-rays revealed degenerative changes in the spine but showed no further degeneration than in the x-rays taken in September 1982 at the time of plaintiffs accident. Dr. Hoerner’s diagnosis was lumbosacral strain with degenerative disc disease, but he did not feel there was a herniated disc. He said plaintiff can do light work without heavy lifting, but could not return to work as a laborer.
Dr. Juneau, orthopedic surgeon, examined plaintiff on October 27, 1983, and did not find a muscle spasm or objective signs of injury. He diagnosed a degenerative disc associated with aging and felt plaintiff recovered from his September, 1982 injury and was able to return to work. Dr. Scul-lin, a diagnostic radiologist, reviewed the CAT scan by Dr. Kewalramani and found no evidence of a herniated disc or nerve root damage.
Plaintiff submits the evidence is sufficient to support total and permanent disability and the trial judge erred by not placing greater emphasis on the treating rather than examining physicians.
The trial court’s findings on factual issues in compensation cases are entitled to great weight and are not to be disturbed except on manifest error. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978). The plaintiff’s burden of proof is by a preponderance of evidence. Juneau v. Tulane Industrial Laundry, 358 So.2d 347 (La.App. 4th Cir.1978).
Dr. LeNoir, the initial treating physician, released plaintiff to work on November 16, 1982. Five other physicians did not find orthopedic or neurologic damage and also said he could return to work. Dr. Kewalra-mani, the second treating physician, admitted a disassociation between plaintiff’s subjective complaints and the objective findings (which were contradicted by the other physicians). Dr. Hoerner saw plaintiff after he re-injured his back and more than one year after the accident.
As we stated in Jennings v. Halliburton Company, 346 So.2d 268, 270, 271 (La.App. 4th Cir.1977):
It is the duty of the trial judge to evaluate the testimony of all the witnesses, both lay and medical. After making such an evaluation, he may accept or reject the opinion expressed by any medical expert, depending on how impressed he is with the qualifications, credibility, and testimony of that expert. In short, the trial judge is obliged to evaluate the testimony of a medical witness according to the same rules applicable to witnesses.
The strong preponderance of medical testimony shows plaintiff suffered a muscle spasm without objective signs of total or permanent disability.
The district court judgment is affirmed.
AFFIRMED.